E9O3MARC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  UNITED STATES OF AMERICA,
4           v.                              10 CR 1060 (RPP)
5  GERALDO MARTINEZ,
6              Defendant.
7  ------------------------------x
8                                           New York, N.Y.
                                            September 24, 2014
9                                           11:15 a.m.

10
   Before:
11
                HON. ROBERT P. PATTERSON, JR.,
12
                                            District Judge
13
14                       APPEARANCES
15 PREET BHARARA
       United States Attorney for the
16     Southern District of New York
   DREW JOHNSON SKINNER
17 KATE REILLY
       Assistant United States Attorneys
18
   JOSHUA L. DRATEL
19     Attorney for Defendant
20 ALSO PRESENT:  Steven Vargas, U.S. Probation
21
22
23
24
25

1      THE DEPUTY CLERK:  United States v. Geraldo Martinez.
2 Is the government ready in this matter?
3      MR. SKINNER:  Yes.  Good morning.  Drew Johnson
4 Skinner and Kate Reilly.  With us is U.S. Probation Officer
5 Steven Vargas.
6      MR. DRATEL:  Joshua Dratel for Mr. Martinez.
7      THE COURT:  Good morning.
8      THE DEFENDANT:  Good morning, sir.
9      THE COURT:  Well, what is the government's position
10 here?
11      MR. SKINNER:  Your Honor, we're here on specifications
12 that have been issued by the probation office.  There is
13 additional information that we've learned since the violation
14 report that I believe was handed up to your Honor.
15      THE COURT:  I see it.
16      MR. SKINNER:  There was a recent arrest on the state
17 charge.  The defendant was arrested on a warrant on Friday and
18 presented before Judge Pitman where he was detained.
19      THE COURT:  Before judge?
20      MR. SKINNER:  Before Magistrate Judge Pitman.
21      THE COURT:  All right.
22      MR. SKINNER:  We'd like to adjourn this matter until
23 the middle of October to allow defense counsel time to consult
24 with his client.
25      THE COURT:  All right.

1            MR. SKINNER:  It is my understanding --
2            THE COURT:  He's detained.
3            MR. SKINNER:  He is currently detained.  The
4    government would seek that he continue to be detained until the
5    next date.
6            MR. DRATEL:  Your Honor, Mr. Martinez has been in
7    state custody I think since July 20 on a state arrest, which is
8    the subject of what the Court has from the subsequent
9    information.  Since that time, Mr. Martinez has been in an
10   inpatient program at Rikers Island, just came to the federal
11   system and so now he's here.
12           THE COURT:  Is he at the MCC?
13           THE DEFENDANT:  MCC, sir.
14           MR. DRATEL:  Obviously, the ultimate goal would be to
15   get Mr. Martinez in an inpatient program obviously outside.
16   But in the interim, we believe that he can be at liberty
17   essentially until the next court appearance which we could
18   schedule for mid October.  Hopefully give us time to get the
19   placement through probation that would enable him to get in an
20   intensive inpatient program.
21           THE COURT:  Well, I think he needs to get an anger
22   management program at MCC.  Am I right?
23           MR. DRATEL:  I don't know, your Honor.  So --
24           THE COURT:  I may be wrong but I think we have one at
25   MCC.  MDC is a different matter.

1            MR. DRATEL:  I think the -- I've spoken to Officer
2   Mulcahy who has been supervising Mr. Martinez.  And he talked
3   about the intensive inpatient program for the drug problem,
4   what we believe underlies the other conduct, and try to get at
5   the root of it obviously.  So that's, from our perspective, the
6   goal.  And in the interim I'm asking for Mr. Martinez's
7   release.
8            THE COURT:  I don't want to release him in view of
9   this record.
10           MR. DRATEL:  I'm sorry, your Honor?
11           THE COURT:  The details of this record are -- although
12  they don't give the date for the first offense, the TPO, the
13  second offense is August 13.  And I gather he's been arrested
14  on these charges.  Am I right?
15           MR. SKINNER:  Yes, your Honor, that's the government's
16  understanding.  The government's understanding is the first
17  incident was on July 20 of this year.  The second incident was
18  on August 14.  And then he was arrested at that time and placed
19  in state custody.
20           THE COURT:  It may be that it is connected with drug
21  use.  But, it could be alcohol.
22           MR. DRATEL:  Your Honor, what we'd like to do is put
23  it on for mid October so we can try to work with probation.
24  See if we can get something, talk to the government, see if we
25  can get a resolution so Mr. Martinez can get proper treatment

1   and the proper place, obviously as the Court sees fit as well.
2   But, I think that would be the first step.
3           THE COURT:  I'll hear from the defendant.  Does the
4   defendant want to say anything?
5           MR. DRATEL:  I don't know.
6           THE DEFENDANT:  No.
7           MR. SKINNER:  Your Honor, if you would permit it, the
8   probation officer would like to add something.
9           MR. VARGAS:  Good morning, your Honor.  Just to
10  clarify, I briefed the case with Officer Mulcahy.  While the
11  ultimate goal is to have Mr. Martinez enter an inpatient
12  program, the probation department does feel that some jail time
13  is appropriate just based on the history of his non-compliance
14  on supervised release and disregard for conditions of
15  supervision.  And the risk he poses obviously to the
16  girlfriend.  That period to be determined by the Court.
17  However, the ultimate goal, if your Honor imposes a jail
18  sentence, is he enter immediately an inpatient program upon his
19  release.
20          THE COURT:  A drug program.
21          MR. VARGAS:  Correct, your Honor.  Whether he will
22  receive anger management and counseling --
23          THE COURT:  We can arrange that.
24          MR. VARGAS:  But just to specify, long term, meaning
25  nothing less than six months.

1                THE COURT:  He's not ready for sentence yet.

2                MR. VARGAS:  No, correct.  That's just the views of

3    Mr. Mulcahy.  Just representing.

4                MR. DRATEL:  Your Honor, that's getting ahead of

5    ourselves in terms of an admit disposition.  I have counter

6    arguments with respect to the utility of a jail sentence before

7    you start the treatment program.  Delaying the treatment

8    program delays the ultimate objective.  We can argue all that

9    at the appropriate time.

10               THE COURT:  Is it the government's thought he should

11   be held pending the disposition of these violations of his

12   conditions of release?

13               MR. SKINNER:  Yes, your Honor.  The defendant should

14   be held because he poses a flight risk and a danger to the

15   community.

16               THE COURT:  He hasn't pled guilty to them.

17               MR. SKINNER:  Correct.  Correct.

18               THE COURT:  So, it would be pending.

19               MR. SKINNER:  Yes.  Pending the next scheduled

20   conference in mid October.

21               THE COURT:  On what grounds?

22               MR. SKINNER:  Both because he's a flight risk and a

23   danger to the community.  The defendant is a flight risk

24   because he has shown that he can't comply with scheduled

25   appearances.  He didn't contact the probation office.  The

1   probation office didn't know where to find him.  He was only
2   arrested because he was arrested on the state charges.  He
3   faces serious charges here, up to two years' imprisonment.
4   He's also a danger to the community, because as reflected by
5   the new assault charges, he's a PCP user, the government
6   understands, which can be a particularly danger drug.  The PSR
7   and the underlying offense reveals a long criminal history.
8            THE COURT:  What dug did you say?
9            MR. SKINNER:  PCP.  So for all those reasons, the
10  government believes the defendant should be detained until the
11  next appearance.
12           THE COURT:  All right.  What date do you want for the
13  next appearance?
14           MR. DRATEL:  I guess sometime towards the end of the
15  week of the 13th of October would be good.
16           THE DEPUTY CLERK:  16th at 12.
17           MR. DRATEL:  Yes.
18           THE DEPUTY CLERK:  12 noon.
19           MR. SKINNER:  Can I just have one moment, please.
20  Officer Mulcahy who is on this case will be out of the office
21  from the 15th to the 17th of October, so if we can do it after
22  that date, that would be best.
23           THE DEPUTY CLERK:  October 22nd at 10, Judge.  That's
24  a Wednesday.
25           THE COURT:  I have medical treatments.  They're early

1    on other dates.

2            THE DEPUTY CLERK:  22nd at 10.

3            MR. SKINNER:  Fine with the government.

4            MR. DRATEL:  Thank you, your Honor.

5            THE COURT:  And the defendant will be held in view of
6    the grounds the government recited for until that date.  Those
7    grounds being his non-compliance with his special conditions of
8    release and his conduct posing a danger to other persons during
9    that period.

10           You have to do something with your anger management
11   problems, Mr. Martinez.  One of the problems of living in some
12   areas of this town is that you're brought up in an atmosphere
13   where a lot of people grow up as sort of "I'm my own man.  No
14   one's going to show me.  No one's going to give me orders.  I'm
15   my own man.  I can do whatever I want."  And the problem with
16   that is, it isn't true.  And the way the community you're
17   brought up in sort of accepts that results in these kind of
18   incidents. Because you're not.  You can't do to other people
19   whatever the hell you want to do.  You can't lose your temper
20   with them that way.

21           If you're in the MCC, there are programs there, and
22   you ought to utilize this period to take an anger management
23   program.  They also have drug programs, but I don't know that
24   they run at the same time.  My experience is the anger
25   management program at the MCC does work on some people.  That's

E9O3MARC

1   all I can tell you.  All right?  See you then.
2              MR. SKINNER:  Thank you, your Honor.
3              MR. DRATEL:  Thank you, your Honor.
4                               o0o