```
EANOMARV

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                           10 CR 1060

GERALDO MARTINEZ,

            Defendant.

------------------------------x
                                         New York, N.Y.
                                         October 23, 20
                                         2:30 p.m.



Before:

            HON. ROBERT P. PATTERSON, JR.,

                                         District Judge


                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
KAN M. NAWADAY
Assistant United States Attorney

JOSHUA LEWIS DRATEL
Attorney for Defendant
```

1            (Case called, in open court; defendant present)

2            THE COURT:  What is the status of this?

3            MR. NAWADAY:  I have spoken with defense counsel and

4    we have an agreement, I believe, to where the government would

5    accept a plea from the defendant to specification number 3 of

6    the violation report.

7            THE COURT:  Has he had the violations read to him or

8    is this his first appearance?

9            MR. DRATEL:  No, your Honor, this is not the first

10   appearance.

11           THE COURT:  Okay.

12           MR. NAWADAY:  This is not the first appearance.  My

13   understanding is that the defendant has been arraigned on all

14   of the specifications.

15           THE COURT:  All right.

16           MR. NAWADAY:  And I believe, your Honor, assuming that

17   the defendant does enter an admission to specification 3, the

18   parties would be ready to proceed immediately to argue on

19   sentencing, if your Honor would like to do that.

20           THE COURT:  All right.

21           Mr. Martinez, specification 3 reads as follows:

22           The offender has not complied with the following

23   conditions of supervision.

24           3.  From on or about May 27, 2014, or any time

25   thereafter, the releasee failed to report to the United States

EANOMARV

|  |  |
|---|---|
| 1 | Probation Office, although directed to do so by his probation |
| 2 | officer.  And it's a condition two, Grade C violation. |
| 3 | Do you admit or deny specification three? |
| 4 | THE DEFENDANT:  I admit, sir. |
| 5 | THE COURT:  You admit.  All right. |
| 6 | Then I'll hear from the parties on the matter of the |
| 7 | penalty to be imposed. |
| 8 | MR. NAWADAY:  Your Honor, the government would seek a |
| 9 | guidelines sentence, which would call for revocation of |
| 10 | supervised release and a term of imprisonment of eight to |
| 11 | 14 months.  Your Honor is familiar with the -- |
| 12 | THE COURT:  8 to 14, you said? |
| 13 | MR. NAWADAY:  Yes, your Honor. |
| 14 | Your Honor is familiar with the defendant.  If your |
| 15 | Honor may recall, back in September 2013, the defendant |
| 16 | appeared before your Honor, and your Honor had admonished him |
| 17 | of what he needed to do on supervised release.  At that time |
| 18 | your Honor was made aware that at that time he had been |
| 19 | arrested for a simple drug possession.  So, he had an arrest a |
| 20 | little over a year ago.  And your Honor admonished him of what |
| 21 | he needed to do. |
| 22 | Defendant now appears before you, again, on these |
| 23 | specifications.  He has failed to appear.  The specifications |
| 24 | also set forth a recent theft arrest in the State. |
| 25 | So, your Honor, the government feels, and I believe |

1  probation feels, that there should be some term of imprisonment
2  to account for the defendant's noncompliance with the
3  conditions of his release.
4      Should your Honor impose a term of imprisonment, the
5  government would also seek that the balance of his supervised
6  release term be reimposed.  So that if your Honor were to
7  impose the low end of the guidelines, 8 months, that there
8  would be a continued term of supervised release after the
9  defendant's completion of the term of imprisonment of
10  16 months.
11      The government also does agree, I think defense
12  counsel would agree, that in-patient treatment should be
13  imposed as a condition, a continued condition of supervised
14  release, after any term of imprisonment that your Honor, if
15  your Honor is inclined, to impose.
16      THE COURT:  Mr. Dratel.
17      MR. DRATEL:  Thank you, your Honor.
18      The difference we have with the government is the
19  length of confinement prior to going to a program.  And there
20  are several reasons why I think that a significantly shorter
21  sentence -- and I'll explain what I mean by that -- is
22  appropriate.
23      But, first, just in terms of the reasons for that,
24  that all additional imprisonment does is delay the most
25  important part of the sentence, which is the in-patient

1    program.

2             I think the Probation Department, Mr. Martinez, and I
3    are all in agreement, I think Mr. Nawaday, too.  I am just
4    saying in terms of the probation department has been
5    supervising Mr. Martinez.  And Mr. Martinez, himself, recognize
6    the fundamental problem is the drug dependency.  He needs an
7    in-patient program to conquer that.

8             Now at MCC, obviously, he doesn't get that.  But when
9    we were here last month, the Court said that programs he has
10   signed up for, the anger management and drug program, but he is
11   on a waiting list because of the volume of people in those
12   programs at MCC.  So he could do a balance of the time on a
13   sentence without any help, without making any progress.  We
14   know that an in-patient program ultimately will be the most
15   productive solution.

16            While he was at Rikers Island on the state arrest --
17   now, between August -- he has been in federal custody for about
18   six weeks.  He was in State custody for I think a little more
19   than a month before that.  Actually, more than that it was
20   almost two months, I think, from July or early August.  While
21   he was at Rikers Island, and I can pass these up to the Court,
22   he did obtain some certificates for programs that were
23   available.  One for financial management, one for employment
24   therapy.  And he also signed up, and he has a letter of
25   confirmation, something called the Osborne Association that

works out of Rikers, that he signed up for drug treatment.  So he has recognized what is required of him, not only in the context of the legal landscape of this case but, also, for the rest of his life.

He has a 13 year old daughter.  He has another child on the way, within the next month.  I also think that reducing the jail component of the sentence is important, not only getting him into treatment quicker, which would be the most productive thing, but also the treatment, once it is successful, will get him back in the community working, so he can support his children.  Again, which he had been doing for his 13 year old.  And he has some confidence that he can get his job back.  He was working at Hunts Point.  And he is confident that he can do that.  But, obviously, the longer we have to wait to get there, the less likely that would be.  So that would be another tremendous advantage to getting him back in the community as early as practicable.

And I don't think that MCC, while the punitive part of it may be necessary on certain levels, the length of it is really what is the problem.  As I said, he is already finishing his fifth week tomorrow at MCC.  I don't know how long it would take the government, the probation department, to find a placement.  But I think if the Court sets something reasonable as a sentence, let's say, you know, two months, that means it gives the probation department another three weeks to get a

1   placement.  I think that's a reasonable time.  I don't know if
2   the Court wants to ask probation of what their own estimate is.
3   But in terms of getting him into the program, so that we can
4   get to the meat of his rehabilitation as quickly as possible.
5   Because MCC is, even though he signed up for those two
6   programs, he is not getting them.
7             THE COURT:  Government, what about that?
8             Mr. Mulcahy.
9             PROBATION:  Judge, just a little background on this,
10  Mr. Martinez and his supervision.
11            Mr. Martinez was part of the Coming Home Program,
12  which --
13            THE COURT:  Oh, he is.
14            MR. MULCAHY:  Yes.  And that was the first appearance
15  that we had before you.  And that was after that first arrest.
16  And, again, he had struggled in that first 60 days.  And we
17  came back before you.  And you made it very clear to Mr.
18  Martinez that, again, he needed to do certain things in order
19  for him to be successful.  Not only in the short term part of
20  his life, but in order to set himself up for more long-term
21  success.
22            Unfortunately, Mr. Martinez did not follow through
23  with your Honor's recommendations.  It is true that Mr.
24  Martinez does have a significant substance abuse problem.  He
25  and I had discussed it on many occasions.  I had put him into

1    treatments.  There was limited success.  We recognize that he
2    needed more.  We had him set up for in-patient treatment and he
3    chose, on a couple of different occasions, to not go.
4             I understand, now, that he has been incarcerated for a
5    little while between the state and here.  And, you know,
6    through, Mr. Dratel, he appears now he is ready for this
7    in-patient program which, again, we're certainly more than
8    willing and happy to try to help facilitate this for him.
9             I do believe Mr. Martinez should have some punitive
10   sanction.  He was given opportunities and he chose to ignore,
11   or chose to just not do them.
12            THE COURT:  What is the underlying charge, here.
13            MR. MULCAHY:  It was a conspiracy, narcotics
14   conspiracy charge.  It was a Class C felony.
15            Everybody wants to help Mr. Martinez.  I know the
16   Court does.  We certainly made efforts on our end but, again,
17   at the end of the day, we keep running into a brick wall
18   because Mr. Martinez does not seem to understand that he needs
19   to make certain efforts.  He needs to follow through with what
20   he needs to do in order to be successful.  I mean we can tell
21   him all day long and forever, this is what he needs to do.
22   But, unfortunately, he chooses to follow his own path and not
23   the suggestions of both myself and the Court.
24            As far as getting him into an in-patient drug
25   treatment.  It does not take a long time.  Fortunately, we do

1    have the resources available in order to facilitate that
2    process relatively quickly.  So whatever time your Honor gives
3    or doesn't give, the time frame between then and the in-patient
4    program should be relatively short.  And I think it should be
5    short because, again, I would rather Mr. Martinez not be on the
6    street for very long.  I am not confident that he will not,
7    unfortunately, relapse.  And if your Honor does order the
8    in-patient program, I would ask you to please explain to Mr.
9    Martinez that this is not a program that is gonna last maybe a
10   few weeks or even a I couple of months.
11            We can't make a determination about what the
12   appropriate length of that treatment program is, because only
13   the professionals there can.  So it might be 6 months,
14   8 months, 12 months that Mr. Martinez is going to be away from
15   his family, away from the potential employment, in order for
16   him to get the help that he really needs.  And I just want Mr.
17   Martinez to understand that, and not think that this could be a
18   30-day thing and I'm going to be back out there in that short
19   period of time.
20            Thank you, Judge.
21            MR. DRATEL:  Your Honor, that's I think part of the
22   reason why a reduced -- just a minimal time more of
23   incarceration, which by the way he has now been in, he has now
24   been in 3 months, really; you know, more than a month, about a
25   month and a half in both state and federal.

1          So if the length of an in-patient program being
2     conditional essentially on Mr. Martinez' ability to make the
3     progress necessary for the professionals at the program to find
4     him suitable for release, is another reason why we should get
5     there as quickly as possible.  And I understand, and I'm not
6     arguing in the context of opportunities missed.  But if you
7     look at it in the context of how a person gets from one place
8     to another, it is not all at once, necessarily.  It is a
9     process.
10         And Mr. Martinez did recognize, as Officer Mulcahy
11    has acknowledged, he recognized the need for an in-patient
12    program.  And he got cold feet.  He balked at the last minute a
13    couple of times.  And it is evident from the reports from the
14    people at Oxy House, where he was attending outpatient that he
15    had come to them and said I need in-patient programming.  But
16    not unlike a lot of other people, couldn't do what was
17    necessary at the time when he had that free will, essentially.
18    That doesn't exist now.  He doesn't have that free will to do
19    it or not do it.  He is gonna be required to do it.  And he is
20    gonna be required to do it in a way that satisfies, as Mr.
21    Mulcahy said, satisfies the professionals that he has really
22    made the progress that is necessary.  And that may be what's
23    necessary.
24         But, at the same time, he is completely committed to
25    that.  And I can tell you that he is completely committed to

1   that in a way that has even changed more demonstrably in the
2   four, five weeks that I have represented him in the sense that
3   his commitment, his understanding, his recognition of all of
4   that has improved dramatically in that regard, as well.
5            THE COURT:  What happens, Mr. Martinez, is that with
6   drug addiction, is that the patient gets confident that he is
7   cured because he is not taking drugs, and he is feeling better,
8   and he has felt better for quite awhile.  And he thinks that he
9   is cured.  But it is deeper than that.  It's something that is
10  in your mind.  I don't know how to express it otherwise, but
11  even though you may be not taking drugs in a month, and you're
12  feeling pretty good, and your body feels better, and you feel
13  as if you could go out in the street, psychologically, when you
14  get out on the street, you are going to be confronted with drug
15  availability.  And there it is, available.  And, time and
16  again, people who have a problem with drugs think they are
17  cured and they leave the program.  That's a waste of the
18  government's money, and it results in a waste of the patient's
19  time.  So what you have to do is wait until the doctors say
20  that they think that you could go out on the street on certain
21  conditions.  And there will probably be some restrictions.  I
22  don't know were you live.  But one of the things I've learned
23  over the years, is that it's not very good to go back to the
24  same neighborhood that you came from.  It's better to live in a
25  different neighborhood.  Why?  Because when you go back to the

Case 1:10-cr-01060-LAP Document 328 Filed 12/03/14 Page 12 of 16    12
EANOMARV

1   old neighborhood, you go back to your old friends.  And those
2   old friends, it's very hard to turn down because you have known
3   them for so many years.  So they may want you to go out and
4   party, do this, and do that.  And it's very hard to say no.
5   But lots of people who fail, it's because their friends want to
6   go back to the old times.  And they take a snort, or two, or
7   what have you, and they fail.  So if it's possible, a lot of
8   people move out of that neighborhood.  And surprisingly, when
9   they do, they are more apt to succeed.  Because it's very hard
10  to turn down old friends.
11          So you have to have a lot of strength.  You have got
12  to show you are a man that is determined to lick this problem,
13  and lick it now.  Because that's the only way it wins.
14          It's you.  The doctors don't cure you.  They can help
15  you.  They can help you get off drugs, they can give you drugs
16  that affect it.  But they can't cure you.  There is only one
17  person that can cure you.  And that's you.  And that really
18  takes determination.  It is hard.
19          When I was a young lawyer, they used to say, he's got
20  a monkey on his back, that was the expression.  And that goes
21  back a long, long time.  But a monkey on your back, stays on
22  your back unless you, yourself, get rid of it.  Change your
23  thinking.  Change.  Have a determination to avoid the
24  circumstances that will lead you back to drugs.
25          How old are you?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1              THE DEFENDANT:  Twenty-six, sir.

2              THE COURT:  This is the time.  You have a long period

3     of life in front of you.  For some reason, I have gotten people

4     in front of me for sentence recently, whose relatives come in

5     the courthouse and they say, you know, this is not really about

6     the length of time, this is about a man's life.  And this is

7     about your life.  It's not about the amount of time.  It's

8     whether you want to have, or whether you've got the strength

9     and the ability to hold to the resolution that:  No, more

10    drugs.  And that's what it is about.

11             Because that's a matter of your life.  What kind of a

12    life are you going to live.  And we can help you.  We want to

13    help you.

14             I don't like the thought of people spending their life

15    in jail.  What you see, for the people who don't have the

16    strength, is in and out of jail for the rest of their life, in

17    and out of jail.  And in those days, when I used to prosecute,

18    which is over 50 years ago, they lose.  And they have a monkey

19    on their backs for the rest of their lives.

20             So, Mr. Dratel is right.  You really have got to get

21    it behind you now.  I know I speak a long time, but the reason

22    I speak a long time is because there is a lot at stake for you.

23    And I want you to understand it.  It's your decision.  That's

24    gonna make all of the difference in your life from here on.

25    And so I'm going to -- what is the alternative here.

1        I knew years ago just to tell you about the Osborne
2   Association.  When you go back, you ask them if they know Spike
3   McCormack.  And he was with me at Attica, when they had the
4   Attica riot.  And he was the head of the Osborne Association
5   back at that time.  And he was a hired by a man named Lithgow
6   Osborne, who has got some descendant running for public office
7   in this election.  I know this because there are not many
8   people called Lithgow Osborne.  But he was quite a guy.  He
9   taught me a lot about prisons, and what a prisoner has to go
10  through, and where the problems are.
11       I think Ms. Gains is the head of the Osborne
12  Association now.  And I may be wrong.  And she knows who Spike
13  McCormack is.  His real name is Austin, but he liked Spike.
14       Well, I'll go along with the suggestions made by Mr.
15  Mulcahy and Mr. Dratel.  It seems to me that they are the same.
16       What about two weeks more of custody, and placement in
17  in-patient drug program, until such time as the administrators
18  of the program say that Mr. Martinez is a good bet for life on
19  the streets.
20       MR. DRATEL:  Yes, sir, I think --
21       THE COURT:  Is that a satisfactory disposition?
22       MR. DRATEL:  Yes, your Honor.  For us, I guess the
23  question is whether Mr. Mulcahy --
24       THE COURT:  I think the two weeks gives him time to
25  get an in-patient bed and get everything started.

1                Let me ask Mr. Mulcahy, so we don't miss anything.

2                MR. NAWADAY:  Your Honor, just so we have the record

3    clear.  Your Honor's sentence is an additional two weeks of

4    imprisonment, which I think in total the imprisonment term

5    would then be about six weeks, a month and a half.  And if I'm

6    right, is your Honor then imposing supervised release for the

7    additional term?

8                THE COURT:  Supervised release for the additional term

9    while he is in treatment, in-patient treatment.

10               MR. NAWADAY:  Okay.  And I believe --

11               THE COURT:  Until such time as the agency, or

12   whichever agency it is that carries out the in-patient

13   treatment, says that he is in a position to be out in the

14   street on his own.

15               MR. NAWADAY:  Yes, your Honor.

16               And I just want to be clear, because the maximum then

17   of continued supervised release your Honor can impose is about

18   22 months.

19               THE COURT:  Could be.  Oh, all right.

20               MR. NAWADAY:  I want to make sure.

21               THE COURT:  All right.  Hopefully, it will be shorter.

22               MR. NAWADAY:  Thank you, your Honor.

23               THE COURT:  A lot shorter.

24               MR. NAWADAY:  Thank you.

25               MR. MULCAHY:  So, your Honor, just if he successfully

1 completes the program, will he be done with supervised release?
2 THE COURT:  Yes.
3 MR. MULCAHY:  All right, thank you.
4 MR. NAWADAY:  Nothing further from the government.
5 MR. DRATEL:  Or for Mr. Martinez.
6 Thank you, your Honor.
7 THE COURT:  All right, thank you.
8 Thank you, Mr. Dratel.
9 (Adjourned)