F5QJMARV                          VOSR

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.                              10 Cr. 1060 LAP

 5    GERALDO MARTINEZ,

 6                   Defendant.

 7    ------------------------------x

 8

 9                                        May 26, 2015
                                          10:20 a.m.
10

11

12    Before:

13                    HON. LORETTA A. PRESKA,

14                                       Chief District Judge

15

16                         APPEARANCES

17

18    PREET BHARARA,
           United States Attorney for the
19         Southern District of New York
      KAN M. NAWADAY,
20         Assistant United States Attorney

21    JEAN D. BARRETT,
           Attorney for defendant Martinez
22
      Also Present:
23         DAVID MULCAHY,
           United States Probation Officer SDNY
24

25
```

F5QJMARV                          VOSR

1                (In open court)

2                (Case called)

3                THE COURT:  Good morning, counsel.  Won't you be

4      seated.  Ms. Barrett, am I correct that Mr. Martinez wishes

5      to -- first of all, he needs to be arraigned.  Second of all --

6      wishes to admit to Specification No. 5?

7                MS. BARRETT:  I believe --

8                THE COURT:  Has he been arraigned?

9                MS. BARRETT:  Yes, last week in magistrate's court.

10               THE COURT:  Thank you.  He is prepared to admit to

11     Specification No. 5?

12               MS. BARRETT:  Yes, he is.

13               THE COURT:  Mr. Martinez, would you stand and raise

14     your right hand.

15               (The defendant was duly sworn)

16               THE COURT:  Sir, do you understand that you're now

17     under oath and if you answer my questions falsely, your answers

18     may later be used against you in a prosecution for perjury or

19     the making of a false statement?

20               THE DEFENDANT:  Yes, ma'am.

21               THE COURT:  How old are you, sir?

22               THE DEFENDANT:  27.

23               THE COURT:  How far did you go in school?

24               THE DEFENDANT:  9th grade, ma'am.

25               THE COURT:  Where were you born?

F5QJMARV                          VOSR

1          THE DEFENDANT:  New Jersey.

2          THE COURT:  So you're a citizen of the United States?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And you read, write, speak and understand

5    English.  Is that right?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Sir, are you currently under the influence

8    of any substance such as alcohol, drugs or any medication that

9    might affect your ability to understand what you're doing here

10   in court today?

11         THE DEFENDANT:  No, ma'am.

12         THE COURT:  Do you feel well enough to understand what

13   you're doing here in court today?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  Have you received a copy of the violations

16   that are alleged against you?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Have you gone over them with Ms. Barrett?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  Has she explained to you that if you deny

21   the specifications, you have the right to have a hearing on

22   them?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  Am I correct that after conferring with

25   Ms. Barrett, you've decided that it is in your best interests

1    to admit to Specification No. 5?

2                THE DEFENDANT:  Yes, ma'am.

3                THE COURT:  Sir, that specification reads:

4                On or about January 12, 2015, in Bronx County, New

5    York, the releasee -- that is you -- committed a new state auto

6    stripping, third degree, in violation of New York Penal Law

7    165.09, a Class A Misdemeanor, in that the releasee was

8    observed removing side-view mirrors from a vehicle without the

9    owner's permission.

10               Do you admit or deny that specification, sir?

11               THE DEFENDANT:  I admit, ma'am.

12               THE COURT:  Is it the fact that on January 12 of 2015,

13   you, indeed, removed side-view mirrors from a car without the

14   permission of the owner?

15               THE DEFENDANT:  Yes, ma'am.

16               THE COURT:  And you knew that was a violation of the

17   terms and conditions of your release, didn't you?

18               THE DEFENDANT:  Yes, ma'am.

19               THE COURT:  Thank you.

20               Mr. Nawaday, is there anything further by way of

21   allocution?

22               MR. NAWADAY:  No, your Honor.

23               THE COURT:  Ms. Barrett, is there any reason why Mr.

24   Martinez should not admit to this violation?

25               MS. BARRETT:  No, your Honor.

F5QJMARV                          VOSR

1          THE COURT:  Very well, then.  Mr. Martinez is found to
2     be guilty of Violation No. 5.
3          Counsel, am I correct that you wish to proceed
4     directly to sentencing?
5          MS. BARRETT:  Yes.  I have conferred with Mr.
6     Martinez, and that is his wish.
7          THE COURT:  Thank you.  Ms. Barrett, do you wish to
8     speak on behalf of Mr. Martinez?
9          MS. BARRETT:  Yes, I do, your Honor.
10         THE COURT:  Yes, ma'am.
11         MS. BARRETT:  Your Honor, I want to just briefly
12    review the procedural history here.  Mr. Martinez pled guilty
13    to a (b)(1)(C) conspiracy, was arrested in November of 2010.
14    He was sentenced by Judge Patterson to 37 months on August
15    18th, 2011 after he was not released on bond.
16         He served his time and participated in RDAP program at
17    Fairton, and he took GED courses while at Fairton for 6 to 9
18    months, took the test once, but did not pass it the first time
19    around, and then he was not able to complete the program to
20    take the test again.
21         As he said, I believe he has only been through the 9th
22    grade, which is not a very strong educational background.  He
23    had a violation of supervised release last fall after he was
24    released from prison in July of 2013, and he pled guilty to
25    failure to report, and he was remanded by Judge Patterson for

F5QJMARV                         VOSR

1    two weeks in custody and then inpatient.

2              Unfortunately, under those circumstances, he was

3    allowed, permitted by Judge Patterson to voluntarily surrender

4    to the drug treatment program, and after hits and misses, he

5    left, the train left the track, and he did not surrender to the

6    drug treatment program despite, as Mr. Martinez agrees, the

7    Probation Department's every effort to assist him.

8              At this point he resumed using drugs while out on the

9    street, and he was arrested within two weeks of walking out of

10   the program, I believe that is St. John's, and two weeks later

11   he was arrested for this charge.

12             He pled guilty to the auto stripping in January, and

13   he was brought here last week directly from Rikers Island after

14   completing what was required of his six-month sentence that he

15   received for the auto stripping.

16             He has obviously not had the benefit of treatment

17   outside of the institution of prison at this point.  Your

18   Honor, I realize that Probation -- and I have had a

19   conversation with the probation officer here today with regard

20   to the possibility of treatment, and I know that he feels that

21   there should be some punishment.

22             I have presented this to Mr. Martinez in a way that I

23   think is fully honest and fair, and that is that in my

24   experience, it is a lot easier to do time in jail than it is to

25   actively participate in an inpatient drug treatment program.

F5QJMARV                          VOSR

1          I also think it is beneficial to transfer inmates

2    directly from jail to inpatient drug treatment programs and not

3    get involved in the self-surrender issue where the temptation

4    is so great.  Mr. Martinez's issue is that he uses marijuana

5    and PCP on a daily basis together, not separately, and has

6    since he was 13 years' old.  He grew up in an abusive

7    household.  The story is there from the probation report that I

8    have gone over.

9          His mother was an addict.  He is willing to go to drug

10   treatment and to participate and wants to do that.  Now, it is

11   easy to say.  Those words come out.  I think that the point

12   here is what is the point?

13         What do we achieve by incarcerating him for a year

14   without treatment because we know that that is going to be the

15   case when giving him, remanding him to a treatment program as a

16   condition of extended supervised release, followed by

17   supervised release would benefit him and benefit society as a

18   whole should he recover.

19         He is not going to recover by going to jail, and he

20   realizes, realizes he has had many opportunities.  That is the

21   nature of his addiction.  It leaves us in this situation where

22   repeated help sometimes works, and I am asking the court to

23   consider a way that we can get him into drug treatment directly

24   from jail so that he can do what he can to recover.

25         He is past the age -- I used to tell my children when

F5QJMARV                          VOSR

1   they were under 25, that they had not fully developed their

2   frontal lobes.  He has finally passed the age of 25.

3   Hopefully, he has matured some over the course and he has spent

4   the last six months incarcerated without treatment, without

5   education or anything of that nature.

6            In my experience with the drug treatment programs,

7   particularly the one at Samaritan Village in Queens, not the

8   one in the Bronx, I believe the one in Queens is a much more

9   structured program, and my experience with those programs is

10  that they provide not only the drug treatment but the

11  opportunities to develop a skill, to go and get a GED, to do

12  those kinds of things.  I think that Mr. Martinez is here to

13  ask for one more chance.

14            THE COURT:  Thank you, ma'am.

15            Mr. Martinez, do you wish to be heard?

16            THE DEFENDANT:  No, ma'am.

17            THE COURT:  Okay.  Does the government wish to be

18  heard?

19            MR. NAWADAY:  Yes, your Honor.

20            The government joins Probation's recommendation.

21  There should be be a punitive element to the court's sentence

22  today.  The court has given this defendant numerous chances,

23  and just to walk your Honor through, Ms. Barrett has walked

24  your Honor through the prior history with this defendant.  He

25  violated supervised release back in October 2014.  Judge

1   Patterson gave him another chance, said okay, go to inpatient

2   treatment.  He never went, and then Judge Patterson gave him

3   another chance.  He consulted with Officer Mulcahy and decided

4   okay, let's see if he can get him into something else because

5   back then when the defendant didn't report to Samaritan

6   Village, the defendant's problem with Samaritan Village, it was

7   too far.  So Officer Mulcahy got the defendant into Phoenix

8   House.  The defendant did go to Phoenix House.  And what did he

9   do?  He walked out.

10          This defendant was given many chances to absolve

11  himself, to stay on the true path under supervised release, and

12  it is not even that much we are asking of him on supervised

13  release.  There are basically two, in my view, tenets of

14  supervised release:

15          Number one, report to your officer who will get you

16  into programs; and

17          Number two, don't commit more crime, which frankly I

18  find it is a little ridiculous we have to inform defendants

19  that is a condition of their supervised release.

20          That is what this defendant did.  He was on supervised

21  release.  He was supposed to be in a program.  Officer Mulcahy

22  got him into two programs, both of which he rejected, and this

23  was after he already completed while in prison the RDAP

24  program.  He has been given by the system, the judicial system,

25  many opportunities and he has failed.

F5QJMARV                          VOSR

1    There has to be a punitive element to that failure or

2    else the court's orders don't really mean anything.  This is

3    the defendant's most recent conviction.  I believe the

4    specification to which the defendant pled guilty to today, he

5    actually pled guilty in the state.  I believe that is his 11th

6    conviction.  It was noted in the defendant's original

7    presentence investigation report that he spent half of his life

8    committing crime.

9    There needs to be some consequence, your Honor, we

10   submit, to the defendant's actions, and the court has been more

11   than gracious in giving the defendant many opportunities to do

12   the right thing, and he has not.

13   THE COURT:  Officer Mulcahy, is thre anything you wish

14   to add?

15   MR. MULCAHY:  Just one thing.

16   Mr. Martinez participated in the Coming Home Program

17   with Judge Patterson.  That is a program where individuals who

18   are identified as high risk, prior to them coming out meet with

19   the judge, although there was no violation action, although

20   with Mr. Martinez there was violation material immediately upon

21   his release.  We met with the court and sat down and Judge

22   Patterson laid out everything on how important it was and all

23   the different mechanisms everyone was going to put in place to

24   make sure all the pitfalls of supervision, one who has

25   substance abuse history, lack of education, all those things we

F5QJMARV                          VOSR

can work on to try to make sure at the end of the day he is not

going to fall himself back into that level of criminal activity

or violations of his behavior.

        Again, it wasn't an official violation, but we did

appear before the court.  That was clearly laid out to him.  I

don't know what to do with Mr. Martinez, who has been given so

many opportunities.  Many times I stand before the court and

again there is always a little bit of room they have exhausted,

but maybe a little more room, maybe we can try again.

        I just don't know if Mr. Martinez deserves that

opportunity any more.  I hate to say that because he is young

and he is impressionable and made a lot of bad decisions, but

everything we have tried to do, he completely failed to

acknowledge it or follow through with it.  I don't know what

else to do, Judge!

        THE COURT:  Is it your recommendation that additional

supervised release be imposed regardless of what happens with

respect to incarceration?

        MR. MULCAHY:  I believe my initial impression or my

initial recommendation was no.  Nothing has changed to really

make me think that.  Again there has been a good amount of

judicial and supervision on our level.  I don't know what else

that we can do.

        We can try again, keep doing the same things over and

over again.  Mr. Martinez doesn't seem willing to make the

1    changes that are necessary to change the outcome of his

2    behavior.

3                THE COURT:  Thank you.

4                Ms. Barrett, is there anything you would like to add?

5                MS. BARRETT:  I just am hoping that we can give some,

6    have some positive outcome and have some hope for him.  I feel

7    it is such a classic, classic situation and --

8                THE COURT:  It is classic in that Mr. Martinez has an

9    unfortunate background, but I am not sure we see each and every

10   defendant with that background so soundly reject all the help

11   that Probation is offering.

12               MS. BARRETT:  Your Honor, I think there are a lot of

13   things that contribute to the place that he is in right now,

14   and from everything that he has told me, he has come to a place

15   where he wants help, and we had the conversation about jail and

16   no further supervised release, and he understands that he would

17   have a commitment to the court following any kind of inpatient

18   treatment, that he would have to go to outpatient treatment, he

19   would have to do that.

20               He lives with his mother and his daughter, and he

21   wants to do it for his daughter.  He wants to do it for the

22   rest of his children who live with their mother.

23               All I can say is what he tells me, and the

24   consequences of that are -- he doesn't go anywhere.  It is not

25   like anybody can find him.  It isn't as if he were absconding

F5QJMARV                          VOSR

1    and going and taking off to a different jurisdiction or taking

2    off to a different country.  He is not doing that.  He is

3    staying in the same place and in the same community, and I

4    think that what he really needs is that intervention of very,

5    very extreme intervention, which I know that they do at

6    Samaritan Village in Queens, and that intervention would

7    hopefully bring him to the other side.

8            It is no guarantee.  It is a risk, but he is willing

9    to accept the idea that he will continue to have the Probation

10   Department involved in his life for a much longer period of

11   time if he opts for this trial than if he opts for jail.

12           He has said he wants treatment.  I think the hardened

13   person comes in, and in my more than 30 years of practice I had

14   this happen, the hardened person comes in and says I'll just do

15   the time, I don't care, let me walk away.  Let me walk away

16   because they have this imaginative notion that at the other end

17   of that is going to be just walking away and not further

18   involvement in the criminal justice system.

19           Mr. Martinez realizes he needs help and he is asking

20   for help.  I understand that there is a concern that there be a

21   punitive aspect of the sentence.  I think the court can

22   structure a sentence so that he does spend some time and then

23   goes into a program and is on supervised release.  I also think

24   that the court might take into consideration the fact that he

25   has been in jail for almost six months based on the charge for

F5QJMARV                           VOSR

1   which he has pled guilty here.

2          I am not an optimist by nature, but I always think

3   that there may be another chance for somebody like Mr. Martinez

4   as he gets older and more mature as he has over the course of

5   time and if he can get the intervention that he needs.

6          I don't think he will do it on his own because I don't

7   think that he has the structure himself.  He needs help from

8   the outside.  If we can give him that opportunity, that

9   structure in a drug treatment program, I would would hope the

10  court would consider it.

11         THE COURT:  Thank you.

12         Anything else from anyone?

13         MR. NAWADAY:  Not for the government.

14         THE COURT:  Thank you.

15         Counsel, as we know, the Chapter 7 guidelines always

16  were and remain advisory.  Nevertheless, I have taken them into

17  account.  The weightiest factor here seems to be both teaching

18  Mr. Martinez to have respect for the law and also addressing

19  his drug issues.  I note the number of convictions Mr. Martinez

20  has suffered, including the number of arrests he suffered since

21  his relatively recent release from federal prison.  This does

22  not bode well.

23         On the other hand, I take into account what

24  Ms. Barrett has said about the need for some intensive drug

25  treatment.  Balancing those and the other sentencing factors,

F5QJMARV                          VOSR

1   it is my intention to impose a period of six months

2   incarceration followed by a period of two years of supervised

3   release.  It is my intention as special conditions of

4   supervised release to require inpatient treatment and to impose

5   a search condition.

6           Is there any reason, counsel, why such a sentence

7   should not be imposed?

8           MR. NAWADAY:  No, your Honor.

9           MS. BARRETT:  No, your Honor.

10          THE COURT:  Very well, then.

11          Mr. Martinez --

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  -- you're sentenced, sir, to a period of

14  six months incarceration.  Following that time, you'll spend a

15  period of two years on supervised release.  During the period

16  of supervised release, you will comply with all of the standard

17  terms and conditions of supervised release.

18          As you know, that includes not committing another

19  federal, state or local crime, not illegally possessing a

20  controlled substance and not possessing a firearm or other

21  destructive device.

22          In addition to those and all of the other standard

23  terms and conditions of supervised release, during that time

24  you will participate in an inpatient substance abuse program

25  approved by the Probation Office.  That program will include

F5QJMARV                         VOSR

```
1    testing to determine whether you've returned to the use of
2    drugs.  The court authorizes the release of available drug
3    treatment evaluations and reports to the substance abuse
4    treatment provider as approved by the probation officer.
5            Sir, you might be required to contribute some or all
6    of the costs of that program depending on your ability to pay
7    and the availability of third-party payment.
8            In addition, sir, during the period of supervised
9    release, you will submit your person, residence, place of
10   business, vehicle, electronic devices and other premises under
11   your control to a search, on the ground that the probation
12   officer has reasonable belief that contraband or evidence of a
13   violation of the terms and conditions of your release can be
14   found there.
15           Such a search must be conducted at a reasonable time
16   and in a reasonable manner.  Failure to submit to such a search
17   might be grounds for revoking your supervised release.  It will
18   be your obligation to inform other residents of the premises or
19   users of the electronic devices that they might be subject to a
20   search under this condition.
21           Sir, it is my duty to inform you that unless you've
22   waived it, you have the right to appeal this sentence and you
23   might have the right to appeal in forma pauperis, which means
24   as a poor person with the waiver of certain fees and expenses.
25           Is there anything further, counsel?
```

F5QJMARV                          VOSR

1          MR. NAWADAY:  The government moves to dismiss the open

2     specifications.

3          THE COURT:  So ordered.

4          MS. BARRETT:  Nothing further.  Thank your Honor.

5          THE COURT:  Mr. Martinez, you're a young man, but

6     counsel says you've matured.  This is it, sir.  You have got to

7     do it.  I know it is hard.  You can't keep up like this.  It is

8     not going to get any better.  You want to be there for your

9     kids, right?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Then you know what you have to do.  It is

12     real hard, but you have to do it.  You have to get off the

13     drugs, you have to get that GED and straighten yourself up, all

14     right, sir?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Counsel says you're more mature.  Let's

17     see it.

18          THE DEFENDANT:  Thank you.

19          THE COURT:  All right, sir.  Good luck to you.

20          Mr. Marshal, thank you.  Thank you, counsel, for your

21     assistance.  Officer, thank you for being here

22               (Court adjourned)

23

24

25